*Verizon Wireless v. Vermont Department of Public Service*, 629-11-17 Wncv (Teachout, J., Jan. 3, 2019)
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | |

---

**BELL ATLANTIC MOBILE SYSTEMS OF
ALLENTOWN, INC. d/b/a VERIZON
WIRELESS and CELLCO PARTNERSHIP
d/b/a VERIZON WIRELESS**
    **Plaintiffs**

    **v.**                                                   **Docket No. 629-11-17 Wncv**

**VERMONT DEPARTMENT OF
PUBLIC SERVICE**
    **Defendant**

---

**NEW CINGULAR WIRELESS PCS, LLC**
    **Plaintiff**

    **v.**                                                   **Docket No. 630-11-17 Wncv**

**STATE OF VERMONT DEPARTMENT OF
PUBLIC SERVICE**
    **Defendant**

---

**SPRINT COMMUNICATIONS COMPANY,
L.P., SPRINT SPECTRUM, L.P., VIRGIN
MOBILE USA, LLC, and NEXTEL
PARTNERS OF UPSTATE NEW YORK, INC.**
    **Plaintiffs**

    **v.**                                                   **Docket No. 631-11-17 Wncv**

**VERMONT DEPARTMENT OF PUBLIC SERVICE**
    **Defendant**

---

---

**T-MOBILE NORTHEAST LLC**
    **Plaintiff**

    **v.**                                     **Docket No. 636-11-17 Wncv**

**VERMONT DEPARTMENT OF PUBLIC SERVICE**
    **Defendant**

---

**VTEL WIRELESS, INC.**
    **Plaintiff**

    **v.**                                     **Docket No. 639-11-17 Wncv**

**STATE OF VERMONT DEPARTMENT OF
PUBLIC SERVICE**
    **Defendant**

---

**DECISION**
**Cross-Motions for Summary Judgment**

Each plaintiff in the captioned cases is a telecommunications service provider operating in Vermont and required by 30 V.S.A. § 22 to file an "annual report" with the Vermont Department of Public Service, which is the defendant in each case. Each plaintiff filed its 2016 report in an unredacted form for the Department's use and in a redacted form for public accessibility purposes. Each filed with the Department its reasons for designating certain financial and customer information confidential. A member of the media then requested that the Department provide an unredacted copy of VTel Wireless, Inc.'s 2016 report. The Department indicated its intent to comply with the request and so notified VTel, giving it an opportunity to seek an injunction barring production. VTel responded by asking the Department to produce the unredacted 2016 filings of all its competitors, the other plaintiffs in these cases. Again, the Department indicated its intent to comply and so notified all competitors.[1] All plaintiffs then filed these suits seeking an injunction barring the Department from producing unredacted copies of their annual reports.[2]

---

[1] The Department is proposing to release the reports completely unredacted but for certain customer information that it agrees is exempt from public access. Because no party is advocating in favor of the release of that information, there is no controversy about it and the court will not address it.

[2] These are separate cases that have not been consolidated pursuant to Rule 42. Due to the near identity of the issues presented, the court is deciding the pending motions jointly in the interest of efficiency.

2

The media requestor prompting the VTel case was notified of the litigation over VTel's annual report and chose not to intervene in that case. VTel is aware of the several cases prompted by its records request and has not sought to intervene in any of those cases. In all these cases, the Department is proposing disclosure of unredacted reports as public records and Plaintiffs are advocating in favor of nondisclosure. Thus, though no requestor (i.e., a person who requests documents pursuant to the Public Records Act) is participating in any of the cases, the parties in each case have sufficiently opposing interests that an effective adversarial presentation of the issues is ensured.

In the complaint in each case, the plaintiff purports to seek Rule 75 review and a declaratory judgment to the effect that its annual report qualifies for an exemption from public disclosure under the Public Records Act, or alternatively that the information it has redacted is exempt from disclosure. The State agrees that these are Rule 75 cases and uses that characterization, in part, to support its argument that its decision to release the reports unredacted is entitled to substantial deference and should be reviewed for abuse of discretion and clear error only.

In each of these cases, Plaintiffs claim that their annual reports are tax returns exempt from disclosure under 1 V.S.A. § 317(c)(6), and that the redacted portions are exempt trade secrets under 1 V.S.A. § 317(c)(9). All parties have filed motions for summary judgment.

*Procedural issues and the standard applicable to the analysis*

Rule 75 procedure relates to court review of governmental action. Rule 75 was used as the procedural vehicle for bringing the issue before the court: plaintiffs seek review of governmental action in the form of the Department's decision to release certain records it has not previously made publicly available. The State argues that the governmental decision is entitled to deference.

Rule 75 is not a legal cause of action in and of itself, although the expression "Rule 75 claim" often is used euphemistically to refer to a legal claim using Rule 75 procedure. The rule sets forth the procedure used for review of governmental action that is not reviewable under Rule 74 but that is "otherwise available by law." V.R.C.P. 75(a). With respect to citizen requests for public records that the government does not release because it deems them exempt, court review and determination is specifically available by law under 1 V.S.A. § 319(a). In such cases, there is no need to invoke Rule 75 and no statutory provision or judicial gloss that calls for deference to the agency.

There is no express statutory right in the Public Records Act to sue the agency to *prevent* it from releasing records that a citizen claims are exempt from public access, but when the requested records contain sensitive information about a third party, such third parties are routinely advised of the requests and permitted to intervene in litigation concerning the applicability of exemptions. In such situations, the third parties have an interest that may be affected in a public records case. In doing so, they stand in the same shoes as a citizen who brings suit under 1 V.S.A. § 319(a). In such situations, Rule 75 is not pertinent as the right to

judicial determination is "available by law." While Rule 75 may have been used as the procedural vehicle for filing suit in these cases, that was perhaps because there was no citizen requestor seeking the annual returns. Nonetheless, the substantive legal issue is the same as if a requestor had made a request for access to those returns. In such a case, Rule 75, and any judicial gloss related to it, would be inapplicable. A request under the Act is sufficient to bring the legal issue before the court. The same law should be applicable under the circumstances of this case, which is essentially a "reverse" public records request.

Thus, the absence of a Public Records Act requestor in these cases does not in any way enlarge the degree of deference to be accorded to the State. The court is statutorily mandated to determine public records issues de novo. 1 V.S.A. § 319(a); *Finberg v. Murnane*, 159 Vt. 431, 434 (1992). Even if that statute did not exist, none of the non-statutory bases for deference exists in these cases. See *In re Korrow Real Estate, LLC Act 250 Permit Amendment Application*, 2018 VT 39, ¶ 20, 2018 WL 1771618 (describing the typical non-statutory bases for deference). The determination of what records are or are not subject to statutory exemption is *not* uniquely within any department's area of expertise. The court's role is to analyze the law and the documents and determine the applicability of the claimed exemptions, which in this case are exemptions for tax returns (Exemption 6) and for trade secrets (Exemption 9).

*Tax Returns; Exemption 6*

Upon initial examination, Plaintiffs' annual reports appear to be exempt tax returns. Each plaintiff urges the court to so rule and exempt from public access the entire annual report, not just the portions they previously deemed confidential and redacted.

The tax return exemption encompasses the following:

A tax return and related documents, correspondence, and certain types of substantiating forms which include the same type of information as in the tax return itself filed with or maintained by the Vermont Department of Taxes *or submitted by a person to any public agency in connection with agency business*.

1 V.S.A. § 317(c)(6) (emphasis added). Generally speaking, a tax return is "[a]n income-tax form on which a person or entity reports income, deductions, and exemptions, and on which tax liability is calculated." Black's Law Dictionary 1475 (7th ed. 1999).

Section 22 of Title 30 expressly imposes a gross revenue "tax" on plaintiffs. It is not a fee for any service. The tax is reported on an "annual report" designed by the Department that is repeatedly referred to in the statutes as a tax return. These are the documents at issue in these cases. It is not clear how they could be considered anything other than tax returns and they clearly were "submitted by a person to any public agency in connection with agency business."

The Department's opposing argument is that such an application of § 317(c)(6) would conflict with the Supreme Court's interpretation of § 317(c)(6) in *Finberg* and the general policy of favoring disclosure of government records to the public and of reading exemptions narrowly.

4

In *Finberg*, a public records requestor sought the names and addresses of certain types of taxpayers. The requestor did not seek copies of tax returns. The City of Burlington took the position that Exemption 6 should be extended to apply to the information sought, presumably because that information also would appear on tax returns. The Court analyzed the nature of the information sought and determined that information—not tax returns—was being sought. The Court noted that it was unknown whether the specific information sought originated in tax returns or elsewhere. To the extent it may have originated in tax returns, the Court noted that it did not have the personal or private character that the exemption sought to protect. See *id.* at 437 ("There is nothing personal or private about the fact that a person or business is subject to the tax; in most cases, that fact is obvious from the nature of the business."). In other words, the tax return exemption does not broadly extend to all information that may appear in a tax return regardless of how the agency came to possess it.

In this case, no requestor seeks information of the type discussed in *Finberg*. Instead, the original request prompting this suit, which the Department proposes to honor, sought copies of Plaintiffs' actual tax returns regardless of what information they may contain. Nowhere in *Finberg* does the Court say or imply that Exemption 6 should not apply to a tax return itself where the request at issue is for a tax return. The policy generally favoring disclosure and the narrow interpretation of exemptions is not a license to ignore the plain language of the Public Records Act. *Springfield Terminal Ry. Co. v. Agency of Transp.*, 174 Vt. 341, 346 (2002) ("The Legislature is presumed to have intended the plain, ordinary meaning of the adopted statutory language. If the statute is unambiguous and the words have plain meaning, we accept that plain meaning as the intent of the Legislature and our inquiry proceeds no further." (citation omitted)). Applying Exemption 6 in this case does not conflict with *Finberg*.

30 V.S.A. § 22 establishes a tax and calls for the filing of a related annual report that provides the supporting information for the basis of the amount of the tax. It appears that the annual reports fall squarely within the definition of a tax return for purposes of Exemption 6. Thus, it appears that the forms are wholly exempt from public disclosure.

Each Plaintiff in these cases, when it filed its annual report, designated only certain portions as confidential. None took the position that its annual report is entirely exempt from public access. The Department apparently implemented this practice and was willing to provide redacted versions of the annual reports rather than treat the entire reports as exempt tax returns. The Department argues that it has expertise related to the telecommunications market, and that the court should defer to its decisions about what to disclose or not.

The legal basis for the practice of treating selected information on tax returns as nonexempt is questionable in light of the comprehensive nature of the statutory exemption.[3] The court cannot discern any legal basis for such a practice. If the court were to endorse such a practice, it would be contrary to 1 V.S.A. § 317(c)(6), which exempts the entire return and does not authorize the Department to disclose selected portions. The Department has the authority to design the form and substance of its tax return form. It acknowledges that its form calls for information beyond what is required to calculate the tax, and that it does so because it is an

---

[3] "The tax return exemption encompasses the following: A tax return and related documents, correspondence, and certain types of substantiation forms . . . ." 1 V.S.A. § 317(c)(6).

5

efficient way to gather helpful information.  If it seeks information from telecommunications providers that may involve its exercise of expertise but is not necessary for tax calculation, then it may wish to design another form.  There does not appear to be any authority for allowing filers and/or the Department to designate selected subparts of a tax return as nonexempt.  The Act itself does not authorize agencies to disclose portions of exempt records as non-exempt.  1 V.S.A. § 317(c).  Court endorsement of such a practice would be contrary to legislative intent and would be likely to lead to confusion and diversion of government resources to responding to requests for portions of exempt documents.

The court therefore grants the Plaintiffs' Motions for Summary Judgment and denies the Department's Motions for Summary Judgment on the grounds that the annual reports at issue are exempt tax returns pursuant to 1 V.S.A. § 317(c)(6).  This ruling makes it unnecessary to consider the claim that the returns qualify for a trade secrets exemption under 1 V.S.A. § 317(c)(9).

ORDER

Plaintiffs' attorneys shall submit proposed forms of judgment.

Dated at Montpelier, Vermont this _____ day of January, 2019.

_____
Mary Miles Teachout
Superior Judge